UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE LOYOLA,

     Plaintiff,

v.                                                                                    Hon. Sally J. Berens

COMMISSIONER OF                                                  Case No. 1:22-cv-619
SOCIAL SECURITY,

     Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have

agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that

if the Commissioner's decision is supported by substantial evidence and in accordance with the

law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the

meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Commissioner's decision will be **reversed and the matter**

**remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the

record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Procedural Posture

Plaintiff filed an application for DIB on November 12, 2019, alleging that she became disabled as of October 2, 2018, due to severe endometriosis, interstitial cystitis (IC), depression and anxiety, sprained ankle, migraines, attention deficit hyperactivity disorder (ADHD), and insomnia. (PageID.67–68, 233–35.) Plaintiff was age 35 at the time of her alleged onset date. (PageID.67.) She had a GED and had completed specialized training as a medical assistant. (PageID.254.) Plaintiff had past work as an attendance secretary, a medical assistant, and a laborer.

2

(PageID.120, 254–55.) Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

ALJ James E. MacDonald conducted a hearing by telephone on January 25, 2021, and received testimony from Plaintiff and Adolph Cwik, an impartial vocational expert (VE). (PageID.30–65.) On February 11, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (PageID.103–22.) The Appeals Council denied Plaintiff's request for review on May 9, 2022 (PageID.22–24), making ALJ MacDonald's February 11, 2021 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on July 8, 2022.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1]  1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through December 31, 2024, and had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) IC; (2) left ankle tendonitis; (3) obesity; (4) depression; (5) anxiety; and (6) ADHD. (PageID.105.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ specifically considered listings 1.02, 12.04, 12.06, and 12.11. As for the "paragraph B" factors applicable to listings 12.04, 12.06, and 12.11, the ALJ found that Plaintiff was moderately limited in the area of understanding, remembering, or applying information and concentrating, persisting, or

maintaining pace, and mildly limited in the areas of interacting with others and adapting or managing oneself. (PageID.106–08.)

With respect to Plaintiff's RFC, the ALJ determined that she retained the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), limited as follows:

> lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently, stand and walk 4 hours during an 8-hour workday, and sit 6 hours during an 8-hour workday with breaks; no climbing ladders, ropes and scaffolds; occasionally climb ropes and scaffolds [sic]; occasionally balance, stoop, kneel, crouch and crawl; occasionally push and pull with the left lower extremity; no exposure to unprotected heights; can understand and remember simple instructions and can carry out simple work-related decisions and judgments performing these tasks with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks; can tolerate interaction with others; and can tolerate the stresses and changes in a routine work setting consistent with simple work.

(PageID.109.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (PageID.120.) At step five, however, based on testimony from the VE, the ALJ found that Plaintiff could perform the occupations of electrical accessory assembler, industrial bagger, and inspector hand packager, 105,300 of which existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.120–21.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in her appeal: (1) the ALJ failed to comply with SSR 15-1p in evaluating the impact of her IC on her ability to perform sustained work activities; (2) the ALJ did improperly discounted Plaintiff's subjective complaints and testimony; and (3) the ALJ's reasons for not crediting the opinion of Plaintiff's treating physician, Dr. Wilkinson, that Plaintiff cannot

perform sustained work activities are not supported by substantial evidence.  (ECF No. 11 at PageID.750.)

## I.      Failure to Comply With SSR 15-1p

The Social Security Administration (SSA) has issued a ruling explaining how it evaluates cases involving IC. *See* SSR 15-1p, 2015 WL 129257 (Mar. 18, 2015), *as corrected*, 2015 WL 1642778 (Apr. 9, 2015). SSR 15-1p describes IC as "a complex genitourinary disorder involving recurring pain or discomfort in the bladder and pelvic region." *Id.* at *2. The disorder produces "[a]n unpleasant sensation (pain, pressure, discomfort) perceived to be related to the urinary bladder, associated with lower urinary tract symptoms of more than six weeks duration, in the absence of infection or other identifiable cause." *Id.* Symptoms may vary in terms of incidence, duration, and severity from person-to-person, and even in the same person. *Id.* at *4. SSR 15-1p explains that the SSA evaluates claims involving IC through the well-known five-step sequential process, similar to any other impairment. *Id.* at *7–8. In assessing a claimant's RFC, an ALJ must consider all of her IC-related symptoms, including chronic pelvic pain, nocturia, and urinary frequency, in determining how they affect her functional capacity. *Id.* at *8. The SSA evaluates a claimant's IC symptoms through the same two-step process used for other types of impairments. *Id.* at *7. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment. If so, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's work-related activities. 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017); *see also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ considers whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or whether the objectively established medical condition is of such severity that it can reasonably be

expected to produce the alleged disabling pain. *Id.* An ALJ is to consider certain factors in evaluating the claimant's statements about the intensity, persistence, and limiting effect of her symptoms:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7–8 (citing 20 C.F.R. § 404.1529(c)(3)).

Plaintiff argues that remand is warranted because the ALJ "failed to reference [SSR 15-1p] . . . or comply with its directives." (ECF No. 11 at Page759.) As an initial matter, "[a]n ALJ's failure to cite to a social security ruling will never constitute reversible error, as 'the ultimate issue is not whether the ALJ included a rote citation, but whether he complied with the regulatory scheme.'" *Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1004, 2017 WL 8676559, at *3 (S.D. Ohio Dec. 12, 2017), *report and recommendation adopted*, 2018 WL 1521768 (S.D. Ohio Mar. 28, 2018) (quoting *Cain v. Comm'r of Soc. Sec.*, No. 1:15-cv-820, 2016 WL 8604322, at *4 (S.D. Ohio Dec. 1, 2016), *report and recommendation adopted*, 2017 WL 1102681 (S.D. Ohio Mar. 23, 2017)). Regardless, Plaintiff is mistaken; the ALJ explicitly referred to SSR 15-1p in his step 3 analysis. (PageID.106 ("I have also considered . . . SSR 15-1p.").) Thus, contrary to Plaintiff's assertion, the ALJ's decision indicates not only that he considered the interplay between Plaintiff's physical and mental IC symptoms (and acknowledged that IC may produce both physical and mental symptoms), but also that he generally followed the procedure set forth in SSR 15-1p for evaluating IC impairments.

Plaintiff further argues that the ALJ failed to recognize, as set forth in SSR 15-1p, that symptoms and findings of IC may fluctuate in frequency and severity over time and need not be continuous. But the ALJ's decision shows that, in evaluating those symptoms, he considered the longitudinal record, as SSR 15-1p directs, particularly with regard to treatment of Plaintiff's pain-related IC complaints during the relevant period, which, as the ALJ noted, was not extensive and included two lengthy gaps. (PageID.110–12.) In other words, the ALJ was not bound to conclude that Plaintiff's IC symptoms persisted at a disabling level simply because of the nature of her IC impairment. *See Malone*, 2017 WL 8676559, at *6 ("Contrary to Plaintiff's argument, neither SSR 15-1p nor any other authority required the ALJ to find that, because she was first diagnosed with IC in March of 2013, her symptoms remained at a continuous and disabling level.").

Finally, Plaintiff argues that the ALJ failed to explain how he accommodated her IC symptoms, including pelvic pain and tenderness, frequent urination, and other symptoms.[2] (ECF No. 11 at PageID.762–63.) But as Plaintiff concedes, the ALJ explained that he accommodated her "pelvic pain and tenderness and variable complaints of fatigue" by restricting her to "light work with occasional postural limitations and no exposure to unprotected heights." (PageID.119.) While Plaintiff disputes that such limitations address these symptoms, SSR 15-1p recognizes that IC may result in exertional and nonexertional limitations in "sitting, standing, walking, lifting, carrying, pushing, and pulling." 2015 WL 1292257, at *9. Plaintiff fails to show that these symptoms necessitated further or different limitations.

However, although the ALJ found that "additional limitations are not warranted" (*id.*), he did not specifically address Plaintiff's alleged urinary frequency or explain why a limitation was

---

[2] Plaintiff does not appear to dispute that the ALJ accommodated her IC-related mental symptoms by restricting her to work involving simple instructions and simple work-related decisions and judgments and performed in two-hour segments allowing for normal breaks. (PageID.109.)

not warranted for frequent urination. Plaintiff testified that she would need to use the bathroom "eight to ten times" during an eight-hour workday, but also said it would be "about every half hour." (PageID.51.) Plaintiff's reports of frequent urination varied. (PageID.423 (negative for dysuria and frequency); 518 (frequent urination and hematuria); 555, 557 (admits frequent urination but reports no increase in frequency); 570 (positive for dysuria, no mention of frequency).) Defendant notes that the VE's testimony—that for the identified jobs, an employee would have about six minutes per hour, not including allowable breaks, to use the restroom without exceeding the allowable "off-task" limit— "is arguably consistent with Plaintiff's initial testimony that she would need to use the restroom 8 to 10 times during an 8-hour workday." (ECF No. 12 at PageID.783 (citing PageID.62.).) But it is neither for the Commissioner nor the Court to supply the ALJ's rationale. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Miller v. Comm'r of Soc. Sec.* No. 1:13-CV-1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (courts are prohibited from engaging in *post hoc* rationale). The ALJ should address this issue in the first instance.

Accordingly, this matter will be remanded to allow the ALJ to address whether additional limitations are warranted for Plaintiff's alleged urinary frequency.

## II.    Evaluation of Subjective Symptoms

As noted above, an ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3

(W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3) but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters*, 127 F.3d at 531. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The ALJ cited several reasons for discounting Plaintiff's subjective complaints, including but not limited to, Plaintiff's daily activities, her conservative and limited treatment, her failure to undergo a recommended surgery, and her medications and their side effects. (PageID.117–19.) Plaintiff contends that the ALJ's findings are not supported by substantial evidence.

Regarding daily activities, Plaintiff reported that she was able to prepare simple microwave meals. She does limited housework, vacuuming, and picking up her room once a week for ten to fifteen minutes. She also drives her kids to school. (PageID.273–74.) Plaintiff shops by using an

app on her phone to order groceries, picks them up curbside, and has her children unload them at home. (PageID.38.) Plaintiff testified that she lies down for most of the day after taking her kids to school, bathes only once or twice a month due to pain, and changes her clothes only about once per week. (PageID.50–51, 52–53.) While it is true that an ALJ may consider a claimant's daily activities in assessing her subjective symptoms, *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990), these limited activities do not support an ability to perform work activities on a sustained basis. *See Rogers*, 486 F.3d at 248-49 (6th Cir. 2007) (finding that activities of driving, cleaning, caring for two dogs, doing laundry, reading, doing stretching exercises, and watching the news were "not comparable to typical work activities"); *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant.").

Defendant asserts that Plaintiff's part-time work during the period at issue also contradicts her allegations of disabling limitations. (ECF No. 12 at PageID.781.) While this is a valid consideration, *see Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013), nothing in the ALJ's decision suggests that he considered Plaintiff's brief stints of work activity in 2019 as a basis to discount her allegations of disabling symptoms. Instead, his discussion of Plaintiff's work activity focused solely on whether she had engaged in substantial gainful activity since her alleged onset date. (PageID.105.)

Apart from daily activities, the ALJ found that Plaintiff's failure to undergo a hysterectomy as her doctors had recommended suggested that her symptoms were not as severe as she alleged.

(PageID.119.) The evidence on this issue was more nuanced than the ALJ recognized. During her annual exam in November 2019, Robert Winter, M.D., an OBGYN, discussed a hysterectomy with Plaintiff as a treatment option for her chronic pelvic pain. He noted, however, that Plaintiff understood "that her pain due to [IC] and myofascial pain dysfunction syndrome will not be affected by the hysterectomy." (PageID.483.) When Plaintiff visited her primary care provider, William Wilkinson, M.D., a few days later, Dr. Wilkinson agreed that "getting a hysterectomy is the right thing to do." (PageID.558.) Plaintiff contends that the ALJ erred by citing her failure to follow through on the surgical recommendation as a basis to evaluate her allegations because the procedure would not have affected her IC pain. (ECF No. 11 at PageID.765–66.) Defendant counters that in reaching this conclusion, the ALJ was permissibly resolving conflicts in the evidence. (ECF No. 12 at PageID.779.) But the doctors' statements were not at odds. Certainly Dr. Winter would not have recommended a hysterectomy if he thought it would produce no benefit, even though it would not alleviate Plaintiff's IC pain symptoms. In that sense, it was, as Dr. Wilkinson opined, "the right thing to do," even though the procedure would not alleviate all of her symptoms. Because this evidence does not suggest that the procedure would have affected the alleged disabling pain, the ALJ erred in citing it as a basis to discount her subjective allegations.

The ALJ also found the fact that Plaintiff received treatment for her pain only from her primary care physician and had not received a referral to a pain management specialist indicative that her symptoms were not as severe as she alleged. (PageID.119.) While Plaintiff does not dispute that this is a valid consideration, she contends that the ALJ failed to comply with SSR 16-3p's requirement that an ALJ not draw a negative inference from a claimant's failure to seek or adhere to treatment "without considering possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or complaints," including that an "individual

may not be able to afford treatment and may not have access to free or low-cost medical services."
2017 WL 5180304, at *9–10. Plaintiff contends that the ALJ failed to consider that because she
was on Medicaid, her treatment options were limited. (ECF No. 11 at PageID.765.) Defendant did
not address this argument. In any event, the ALJ acknowledged that Plaintiff was on Medicaid and
accurately noted that Plaintiff had not been referred to a pain-management specialist. Moreover, it
is not clear that Medicaid would not have paid for a pain management specialist. *See Rushing v.
Comm'r of Soc. Sec.*, No. 1:14-cv-6, 2015 WL 1478271, at *9 (W.D. Mich. Mar. 31, 2015)
("Although plaintiff has limited financial resources, the record includes no reference to pain-
management treatment at a free clinic, and plaintiff acknowledged having received Medicaid, at
least intermittently, affording her more access to treatment."). Regardless, because the Court
concludes that there are other reasons to remand the matter for a proper evaluation of Plaintiff's
subjective symptoms, on remand the ALJ should also consider whether Medicaid would cover
services from a pain management specialist or played any part in the lack of a referral to a pain
management specialist.[3]

## III.  Opinion Evidence

Last, Plaintiff contends that the ALJ erred in evaluating Dr. Wilkinson's opinion regarding
her physical impairments. Because Plaintiff filed her application after March 27, 2017, the ALJ
evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c. Under that regulation, the
ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any

---

[3] The Court finds no merit to Plaintiff's assertion that the ALJ failed to properly consider her
medication side effects. The ALJ acknowledged Plaintiff's testimony that her medications do help
with her pain. (PageID.119.) While the ALJ also indicated that Plaintiff denied side effects on one
occasion (*id.*), he also credited her hearing testimony that her medication makes her sleepy and
causes brain fog, lightheadedness, and nausea (PageID.110), citing it as support for his finding that
Plaintiff was moderately limited in her ability to understand, remember, and apply information.
(PageID.116.) The ALJ properly accounted for medication side effects by limiting Plaintiff so
simple work and no exposure to unprotected heights. (PageID.109.)

medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating

source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the

persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs

(c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(b)(1). Those factors

include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization;

and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(1)–

(5). The ALJ must explain his or her consideration of the supportability and consistency factors,

but absent circumstances not present here, is not required to explain how the remaining factors

were considered. 20 C.F.R. § 404.l520c(b)(2), (3). The regulations explain "supportability" and

"consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(1)–(2).

On January 19, 2021, Dr. Wilkinson completed a form regarding Plaintiff's physical work

capacity. He indicted that Plaintiff's diagnoses included chronic pelvic pain due to IC and

endometriosis, depression with anxiety, post-traumatic stress disorder, chronic mixed headaches,

and ADHD. (PageID.736.) Dr. Wilkinson stated that Plaintiff's medications caused fatigue and

distress, and that she experienced moderate to severe daily pelvic pain that is sharp, crampy, and

dull, and had increased pain with her menstrual cycle. (PageID.737.) He opined that Plaintiff could

not perform light or sedentary work, would miss two days of work per week, and would be off

task over 20 percent of the work day, in addition to normal breaks, due to her "combined physical and mental" impairments. (PageID.738–40.)

The ALJ found the opinion unpersuasive because it was "not supported by and not consistent with the medical evidence of record." (PageID.117.) The ALJ did not err in finding the opinion unsupported because Dr. Wilkinson failed to list objective evidence to support the limitations he assessed. (PageID.736–37.) Moreover, contrary to Plaintiff's assertion, Dr. Wilkinson's explanation that Plaintiff experiences chronic moderate to severe daily pelvic pain with sharp, crampy and dull pain and increased pain with her menstrual cycle was not an opinion, but instead a report of Plaintiff's complaints. (PageID.737.) *See Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005) ("There is no indication that Dr. McFadden's opinion was supported by anything other than Bell's self-reports of his symptoms. Such reports alone cannot support a finding of impairment.").

As for consistency, the ALJ's observations about Plaintiff's normal gait, residual ankle instability, and obesity in support of his finding that Plaintiff could perform light work with additional limitations do not directly address Plaintiff's alleged pelvic pain. (PageID.118–19.) While the ALJ did cite other reasons supporting his consistency analysis, some of those findings lack substantial evidence or warrant additional consideration for the reasons set forth above regarding the ALJ's subjective symptom analysis. Therefore, on remand, the ALJ should reevaluate Dr. Wilkinson's opinion in light of these issues.

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed and remanded** for further factual findings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An order consistent with this opinion will enter.

Dated: March 6, 2023                              /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge